## BURK'S ADM'R v. JONES & ALLEN.

1. Where a creditor, by *scire facias*, seeks to subject lands to the payment of a judgment rendered against the intestate in his lifetime, a plea *puis darrein continuance*, that since the issuance of the *sci. fa.* the estate has been declared insolvent, &c., is a good bar.
2. The lien of a judgment upon the real estate of a deceased debtor, is destroyed by his death, and upon the declaration of the insolvency of the estate, before judgment on *scire facias*, subjecting the land, the estate vests in the administrator, for the purpose of paying all the debts *pro rata.*

Writ of Error to the County Court of Marengo.

THIS was a proceeding at the instance of the defendants in error, by *scire facias*, to subject certain lands to the payment of a judgment rendered in their favor, in the county court, for the sum of $81 79, rendered against one Wood F. Monk in November, 1839. That since the rendition of the judgment, and after execution had been returned by the sheriff to the next succeeding term, indorsed by the sheriff, "no property found," said Monk departed this life seized of the land now sought to be subjected by the *sci. fa.*

The defendants appeared, and the administrator of Monk pleaded *puis darrein continuance*, the insolvency of the estate, in bar to the relief sought by the *sci. fa.*, to which plea a demurrer was sustained.

It appears from the plea, that the estate was declared insolvent after the *sci. fa.* had issued. The county court proceeded to give judgment subjecting the land to the satisfaction of the judgment.

BROOKS & BYRD, for the plaintiff in error.

1. A *sci. fa.* is the commencement of a suit, and the decree of insolvency vests the property in the administrator for the benefit of creditors, to be distributed *pro rata* among them. See Clay's Dig. 192, § 2; Clarke v. West. 5 Ala. R. 117.

2. The judgment for costs should have been certified to the orphans' court. Clay's Dig. 195, § 13.

The court cannot render a judgment by default against an infant, and should have called a jury to ascertain the facts of the case.

The costs should have been given against the guardian *ad litem* of the heir, and not against the administrator.

J. W. HENLEY, for defendants in error, made the following points:

1. Under the operation of our various statutes, (Clay's Dig. 199, § 1; Ib. 202, § 4; 205, § 17,) judgments are held to create a lien on the lands of a defendant in execution, from the date of its rendition, (Morris v. Ellis, 3 Ala. Rep. 560,) and that such lien is co-extensive with the State. Campbell, use, &c. v. Spence et al. 4 Ala. Rep. 543.

The lien of the judgment is a substantial right. It is the right to compel the collection of his debt out of the lands of the defendant by execution and sale. It is *a right*, valuable, of which the plaintiff cannot be deprived without his consent, or some fault on his part. The lien of the judgment on the defendant's land, is as ample and binding as that of the execution, after its delivery to the sheriff.

Where an execution has been placed in the sheriff's hands in the lifetime of a defendant, its lien is not destroyed by his death, if executions are regularly issued from term to term. Collingsworth v. Horn, 4 S. & P. 237; Fryer, adm'r, v. Dennis, 3 Ala. Rep. 254; Boyd, adm'r, v. Dennis, 6 Ib. 55. Why should the lien of the judgment on the land be any more destroyed by the defendant's death?

If the lien has become perfect, the courts are bound to enforce it. All they have any right to ask, when seeking their aid, is, has he a lien?

The lien of an attachment is only an inchoate lien—imperfect and incomplete—and therefore not binding. Such a lien is lost by the report of insolvency. Hale, adm'r, v. Cummings & Spiker, 3 Ala. Rep. 398.

But the reason given why the lien of the attachment was lost by the report of insolvency, was, that it could not be

Burk's Adm'r v. Jones & Allen.

completed by a judgment. Could it have been completed by a judgment, the lien would have been preserved, and would have dated back to the levy of the attachment, notwithstanding the report of insolvency.

The right to the *sci. fa.* is based upon the insufficiency of the personal estate to pay the debts of the deceased. It presupposes the insolvency of the estate. Clay's Dig. 197, § 27.

2. The next error complained of, is clearly a clerical error, i. e. that a judgment for costs was rendered against the administrator personally. As the error might have been amended in the court below, the court will not reverse for this, except to render here at the cost of the plaintiff in error.

To show that it was a clerical error, see Yarborough's Ex. v. Scott's Ex., 5 Ala. Rep. 221; Johnson v. Gaines, 8 Ib. 791; Oliver v. Hearne & Whitman, 4 Ib. 271; 3 Ib. 205.

And that it will be rendered here, see Oliver v. Hearne & Whitman, 4 Ala. 271.

CHILTON, J.—No objection is urged to the form of the plea *puis darrein continuance,* and we are called upon to decide whether it interposes a good bar to the further prosecution of the *scire facias.* In the case of Fitzpatrick, et al. v. B. & W. Edgar, 5 Ala. Rep. 499, it is said, "a lien is not an absolute, but a qualified right, given by law, or created by the act of the parties, by which real or personal property is charged with the payment of a debt or duty, and that a lien on land, in virtue of a judgment, being merely a right to charge the land with the payment of the judgment, may be waived or lost by the laches of the party entitled to enforce it—so a lien created by law, may be taken away by law," &c. In the case from which we make this quotation, the estate was declared insolvent, *before* the judgment creditor sued out his *scire facias.* The court seem to lay some stress upon this fact. "The plaintiff," it is added, "might have enforced his lien by selling the lands of the decedent, if he had thought proper to do so, but he has lain by until the administrator has reported the estate insolvent, which by operation of law, divests the estate out of the heirs at law, and vests the same in the administrator, for equal distribution." By our statute,

22

no preference is given to judgment creditors over others in the satisfaction of their demands out of insolvent estates. Each creditor, except for last sickness and funeral expenses, is to share *pro rata.* Clay's Dig. 194, § 12; 192, § 2. If a lien has attached, such as may be enforced by execution, after the death of the intestate, such right to satisfaction is not divested by the declaration of insolvency. But when the judgment creditor cannot have execution of his judgment without the aid of the court, by *scire facias* against the heirs and personal representatives, if the estate, in the mean time, has been duly declared insolvent, the court will refuse its aid, and remit the party to the orphans' court to share *pro rata* with the other creditors. This view seems to harmonise with the previous decisions of this court, and accords with the spirit of our legislative enactments on the subject. It is true, as contended for by the defendant's counsel, that the judgment creates a lien on the real estate of the debtor, and which is co-extensive with the State. Campbell, use, &c. v. Spence, et al. 4 Ala. Rep. 543. But allowing the lien to exist in the lifetime of the debtor, the question is, how is this lien affected by his death? Upon the death of the judgment debtor intestate, the land immediately descends to his heirs. Their title cannot be divested without a proceeding instituted for that purpose, and to which they must be made parties, so that they may show cause against the divestiture. See Lucas v. Doe ex dem. Price, 4 Ala. Rep. 679. In Mansony and Hurtell v. U. S. Bank, et al. 4 Ala. Rep. 735, this court, in a very elaborate investigation of the authorities upon the point now under consideration, indicate in strong terms, that an execution issuing after the death of the defendant, is, as it reepects his lands, a nullity. See the authorities collected in that case. This may now be regarded as the settled law. See Abercrombie v. Hall, 6 Ala. 657. We have no statute saying a judgment shall be a lien on land, but it is held, the lien attaches by virtue of the statute authorizing their extension under the writ of *elegit.* See Morris v. Ellis, 3 Ala. Rep. 560; Campbell, use, &c. v. Spence, *supra.* If then the lien is dependent upon the right which the judgment creditor has, to have the land exteded, can it survive that right? It is clear that it cannot, and as we

have seen that the right to an execution, and of consequence an *elegit*, is destroyed by the death of the party defendant in the judgment, it follows that the lien of the judgment is also gone. See Bank of the U. S. v. Winston's ex'rs, 2 Brockenb. Rep. 252; 2 Call's Rep. 125; 4 Hen. & Munf. Rep. 57; 1 Brockb. 170. Upon the same principle, the giving an injunction bond destroys the lien. It deprives the party for the time being, of his right to an execution, or *elegit*, for its satisfaction. The cases referred to by the defendant's counsel of Collingsworth v. Horn, 4 S. & Por. 237; Fryer v. Dennis, 3 Ala. Rep. 254; and Boyd, adm'r, v. Dennis, 6 Ala. Rep. 55, do not militate against this view. These cases merely decide, that where execution has been sued out in the lifetime of the debtor, and regularly kept up without the chasm of an intervening term, a lien upon the personal property created by the execution being placed in the hands of the officer, is preserved after the death of the defendant. The error consists in not taking the distinction between *personal estate bound by the executions* regularly kept up, and real estate, bound by the judgment by virtue of the *right of satisfaction by elegit*, which right, as against the debtor, is destroyed by his death—so, while the execution is permitted to continue as to the personalty, the judgment does not surive as to the realty. Woodcock v. Bennet, 1 Cow. 740. It follows, that the heirs take the title to the land discharged of the lien of the judgment, but charged with the payment of all the ancestor's debts, and as in this case, it becomes assets in the hands of the administrator for the payment of the debts of the estate, upon his report of insolvency, which report was made before the judgment subjecting the land to the satisfaction of the plaintiff's demand, such judgment was erroneous.

It is unnecessary to examine the other points raised in the argument, as what we have said is decisive of the case. Let the judgment of the county court be reversed, and the cause will be remanded, if denied, that the defendant in error may take issue upon the plea of insolvency.